IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JARRED L WILLIAMS,

      Petitioner,

v.                                      CASE NO. 1:18-cv-195-AW-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## **REPORT AND RECOMMENDATION**

Petitioner initiated this case by filing a Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 challenging his Alachua County

conviction of burglary of an unoccupied conveyance, for which he is serving

a five-year sentence.  ECF No. 1.  The Respondent has filed a Response

together with relevant portions of the state-court record.  ECF No. 17.

Although afforded an opportunity to do so, Petitioner has not filed a reply.

Upon due consideration of the Petition and the Response, it is respectfully

recommended that the Petition be denied.[1]

_____

[1]Because the Court may resolve the Petition on the basis of the record, the Court has
determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing
Habeas Corpus Petitions Under Section 2254.

## I. <u>State Court Procedural History</u>

The procedural history of Petitioner's case may be summarized as follows.  Petitioner was charged by information with burglary of an unoccupied conveyance.  On September 26, 2016, he pleaded *nolo contendere* pursuant to an "open plea".  ECF No. 17-1 at 44-49.  Petitioner was adjudicated guilty and sentenced on that same date to five years in prison.  *Id.* at 35-37.

Petitioner, through counsel, filed a motion to withdraw his plea and for appointment of conflict-free counsel.  *Id.* at 56-57.  New counsel was appointed, and counsel filed a renewed motion to withdraw Petitioner's plea on the ground of ineffective assistance of counsel.  *Id.* at 65-70.  The trial court summarily denied the motion without an evidentiary hearing.  *Id.* at 71-75.  Petitioner appealed, and the First DCA affirmed *per curiam* without a written opinion.  *Id.* at 185.

Petitioner then filed, through counsel, a motion to modify his sentence.  Counsel represented that she had visited Petitioner at his inmate work camp and that "the attitude expressed by [Petitioner] at the change of plea hearing is no longer his attitude," and that should the court grant a hearing it would hear from Petitioner who "has had time to consider the case and his involvement more fully, and has a perspective more

consistent with the facts alleged." *Id.* at 189-90. The trial court summarily denied the motion in a non-appealable order. *Id.* at 192.

The instant federal petition, which Respondent concedes is timely, followed. Petitioner asserts four claims for relief: (1) Trial counsel failed to investigate Petitioner's "consent" defense and pressured him into pleading guilty; (2) Trial counsel rushed Petitioner into taking an open plea by telling Petitioner that he would get the maximum sentence if he went to trial, and that he would get a sentence of probation or work release or "some time at county"; (3) Petitioner's sentence is excessive and not commensurate with his criminal history; and (4) The trial court erred during the colloquy by failing to inquire about Petitioner's claimed defense of consent.

## II. Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each

appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id.* at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### III. <u>Standard of Review</u>

For claims that are properly exhausted, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* 571 U.S. 12*,* 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."  *Id.*  This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id.* (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–787

(2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id.* (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id.* (quoting *Harrington*, 131 S.Ct. at 786).

## IV. <u>Discussion</u>

### *A. Failure to Exhaust as Federal Claims*

Respondent contends that the Petition should be denied because Petitioner failed to assert any federal constitutional grounds in support of any of his claims in state court. In his state court proceedings, Petitioner relied exclusively on Florida caselaw and procedural rules. ECF No. 17 at 5-14.

As noted, to properly exhaust a federal claim, a petitioner must "fairly present" his federal claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' *federal* rights." *Baldwin*, 541 U.S. at 29 (emphasis added). A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record"; a reasonable reader should be able to understand the factual and legal bases for the federal claim. *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005)

(quotations and citations omitted).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.' " *Baldwin*, 541 U.S. at 32.

The record supports Respondent's argument.  In none of his trial court motions or appellate briefs did Petitioner cite any federal sources of law, nor did he label any of his claims "federal".  *See* ECF No. 17-1 at 65-69 (motion to withdraw plea); 148-59 (brief on appeal); 189-90 (motion to modify sentence).

Because Petitioner failed to assert any of his claims as federal constitutional claims in state court, his claims are unexhausted and procedurally defaulted.  Petitioner makes no showing of cause and prejudice sufficient to overcome the procedural default, nor would the record support a conclusion that his guilty-plea conviction amounts to a fundamental miscarriage of justice.  The Petition is therefore due to be denied for failure to exhaust any federal constitutional claims in state court.

Nevertheless, in view of Petitioner's *pro se* status and because it is clear that he is not entitled to federal habeas corpus relief on the merits of his claims, the Court will address the merits.  *See* 28 U.S.C. § 2254(b)(2) (federal habeas petition may be denied on the merits notwithstanding

failure to exhaust state-court remedies).

## B.  Claims 1 & 2: Ineffective Assistance During Plea Proceeding

Petitioner contends that his counsel rendered ineffective assistance in two ways: First, counsel failed to investigate Petitioner's claim that the alleged victim knew Petitioner and consented to Petitioner being in the victim's car; and second, counsel misadvised Petitioner that he would not receive a five-year maximum sentence if he pleaded guilty.  Petitioner claims that he only had 20 minutes to make a decision between entering a plea or going to trial that same morning.  ECF No. 1 at 9-11.

The Supreme Court has limited the circumstances under which a guilty plea or its equivalent may be attacked on collateral review. *See, e.g., Bousley v. United States*, 523 U.S. 614, 621 (1998). A voluntary and intelligent plea by a person advised by competent counsel may not be collaterally attacked, and "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Id*. A plea is voluntary in a constitutional sense "unless induced by threats . . . misrepresentations . . . or perhaps by promises that are by their nature having no proper relationship to the prosecutor's business." *Id*. at 619 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). A plea is considered intelligently made if the accused is reasonably informed of the

true nature of the charge. *Henderson v. Morgan*, 426 U.S. 637, 645 (1976).

"A defendant is not entitled to withdraw his plea merely because he

discovers long after the plea has been accepted that his calculus

misapprehended the quality of the State's case or the likely penalties

attached to alternative courses of action." *Brady*, 397 U.S. at 757 (1970).

The *Strickland* test is applicable in habeas challenges to the

voluntariness of a plea when ineffective assistance of counsel is alleged.

*Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Premo v. Moore*, 562 U.S. 115,

125 (2011). Judicial scrutiny in this context is highly deferential. *See e.g.,*

*United States v. Freixas*, 332 F.3d 1314, 1319 (11th Cir. 2003). The

decision to plead involves the making of difficult judgments, and the

requirement that a plea must be intelligently made "is not a requirement

that all advice offered by the defendant's lawyer withstand retrospective

examination in a post-conviction hearing." *McMann v. Richardson*, 397 U.S.

759, 769–70 (1970). "If a prisoner pleads guilty on the advice of counsel,

he must demonstrate that the advice was not 'within the range of

competence demanded of attorneys in criminal cases,'" in order to merit

collateral relief. *McMann,* 397 U.S. at 771.  A defendant who enters a plea

may not raise claims relating to deprivation of constitutional rights occurring

before the plea but may only attack the voluntariness of the plea by

showing counsel's advice fell below the *McMann* standard. *Tollett v.*

*Henderson*, 411 U.S. 258, 267 (1973).

> The U.S. Supreme Court has further explained:

> A plea of guilty and the ensuing conviction comprehend all of
> the factual and legal elements necessary to sustain a binding,
> final judgment of guilt and a lawful sentence. Accordingly, when
> the judgment of conviction upon a guilty plea has become final
> and the offender seeks to reopen the proceeding, the inquiry is
> ordinarily confined to whether the underlying plea was both
> counseled and voluntary. If the answer is in the affirmative then
> the conviction and the plea, as a general rule, foreclose the
> collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989); *see also Mabry v.*

*Johnson*, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and

intelligent plea of guilty made by an accused person, who has been

advised by competent counsel, may not be collaterally attacked."),

*disapproved of in part on other grounds, Puckett v. United States*, 556 U.S.

129, 138 n.1 (2009).

To satisfy the prejudice prong of *Strickland* in the context of a habeas

challenge to a conviction based on a plea, the petitioner must establish that

the deficient performance affected the outcome of the plea process and

that, but for counsel's errors, the petitioner would not have entered the plea

and would have insisted on going to trial. *Hill*, 474 U.S. at 58–59. "It is not

enough for [petitioner] to show that the errors had some conceivable effect

on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

"[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). When, at a plea colloquy, the presiding judge correctly advises a defendant about the consequences of pleading guilty, the judge's advice cures any contrary advice by counsel. *See, e.g., United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (holding that an erroneous prediction by counsel is not ineffective assistance where an adequate plea hearing was conducted and written plea agreement accurately stated the potential sentence); *United States v. Wilson*, 245 Fed.Appx. 10, 12 (11th Cir. 2007); *Gordon v. United States*, Nos. 3:12cr1265–J–34JRK, 3:10cr130–J–34JRK, 2015 WL 413102, at *10 (M. D. Fla. Jan. 30, 2015).

In its order denying Petitioner's motion to withdraw his guilty plea, the trial court observed that under state law "'[w]here a motion to withdraw a plea is filed after sentencing, the defendant has the burden of proving that a manifest injustice has occurred and that withdrawal is necessary to correct the manifest injustice.'" ECF No. 17-1 at 71-72 (citing *Panchu v.*

*State,* 1 So.3d 1243, 1245 (Fla. 4th DCA 2009)).  The court reviewed

Petitioner's written plea agreement and the transcript of his plea colloquy

and sentencing.  *Id.* at 72-73.

In his plea agreement, Petitioner acknowledged, under oath, that he

believed that his attorney was "fully informed" on all matters pertaining to

Petitioner's case and that "he has properly investigated all witnesses

(including alibi witnesses), facts of this case, defenses available to me, and

motions appropriate to file on my behalf."  ECF No. 17-1 at 44.  Petitioner

acknowledged that he was pleading guilty to a third-degree felony count of

burglary of an unoccupied conveyance, which carried a statutory maximum

possible sentence of five years.  Petitioner's agreement provided that he

was entering an "open plea" for which the parties agreed to "request

probation."  *Id.* at 47.  However, Petitioner further acknowledged that "if I

have been told by my attorney that I might receive probation or a light

sentence, this is merely his/her opinion or estimate and is not binding on

the judge."  *Id.* at 46.  Petitioner affirmed that his attorney had done all that

a competent attorney could do to counsel him, and that he was satisfied

with the advice and help of counsel  *Id.* at 45.

Petitioner's public defender conducted the initial plea colloquy.

Petitioner testified under oath that he had reviewed the plea petition with

his public defender and understood that he was entering a no-contest plea to one count of burglary of an unoccupied conveyance, a third-degree felony carrying a maximum sentence of five years in prison. Petitioner affirmed that the parties were set for a "pick-and-go" trial that morning, but that he was giving up his right to a trial as well as other rights. Petitioner denied that he was under the influence of any medications, and that he was entering his plea freely, knowingly, intelligently, and voluntarily. Petitioner testified that he believed the plea to be in his best interest. *Id.* at 91-93.

Petitioner expressly denied that he had been forced, threatened, or promised anything in exchange for his plea. He affirmed that he understood it was an open plea, which meant that "there's no agreement between the state and the defense. It will ultimately be up to [the court] to determine what the sentence here is today," although "we get to present mitigation, and the state gets to present a recommendation as well." *Id.* at 94. Petitioner's counsel tendered the plea as "freely, knowingly, and voluntarily entered." *Id.* at 95.

The court then conduced a further colloquy during which Petitioner confirmed that he had gone over the plea petition fully with his counsel, that he could read, write, and understand English; that no one had coerced or forced him into entering a plea, and that he was not under the influence of

drugs or alcohol.  *Id.* at 95-96.  Petitioner asked his counsel about addressing the court, and the court confirmed that Petitioner would have an opportunity to address the court in mitigation.  The court then inquired "[y]ou don't have any questions or reservations about what you're doing here today; is that correct, sir?"  Petitioner replied "[t]hat's correct, sir."  *Id.* at 96.

The court then asked the State for the factual basis.  The state attorney proffered that on January 12, 2016, Petitioner was found at the Loft Apartments in Gainesville.  The victim, Clarence Blackett, observed Petitioner looking into vehicles in the parking lot.  Blackett went outside and saw Petitioner inside his vehicle.  Blackett called 911, and officers apprehended Petitioner inside Blackett's car with some of Blackett's possessions.  In a post-Miranda statement, Petitioner admitted that he was in the car to steal the items and sell or pawn them.  *Id.* at 96-97.

Based on the petition, the plea colloquy, and the factual basis, the court accepted the plea and found that "the plea is freely, knowingly, and voluntarily made and there's an adequate factual basis."  The court then asked whether the parties wished to be heard prior to imposition of sentence.  The parties agreed that Petitioner and his counsel could speak first in mitigation.  *Id.* at 97-98.

Petitioner's counsel informed the court that Petitioner had complied with conditions of release pending his trial.  He pointed out that when Petitioner was apprehended in the victim's car he did not attempt to flee and he cooperated with law enforcement.  Counsel stated that Petitioner's mother was present to testify in his behalf.  *Id.* at 98.

Petitioner then spoke on his own behalf.  Petitioner contended that he was "inside of Mr. Blackett's car with Mr. Blackett's knowledge and I was sitting and I was waiting on Mr. Blackett, which I told the police."  Petitioner alleged that Blackett was "setting me up".  *Id.* at 98-99.  Petitioner's counsel asked Petitioner whether they had "talked about all this", and Petitioner confirmed that he had, but he again insisted that he was merely sitting in Blackett's car.  Petitioner denied that he had made the confession to police described in the factual basis.  Petitioner conceded that he had a criminal history, but had done "everything in my power to stay on the right side of the law."  Petitioner acknowledge that although he was ready to take his case to trial "there's a very big risk".  *Id.* at 99-100.

Petitioner addressed personal factors in mitigation of his sentence, such as his work history, helping family members who needed assistance, and doing things for his daughter.  Petitioner testified that he had changed, could be successful, and asked the court for mercy.  *Id.* at 101-02.

Petitioner's mother then testified about how Petitioner assisted the family

and was trying to work after losing his job as a result of his arrest.  *Id.* at

102-06.

The state then addressed the court and suggested that the court

should not accept the plea in light of Petitioner's representation that he was

not guilty.  The state attorney said:

> I am 100 percent convinced that he's lying to the court.  Because this
> trial is set for a pick and go, the witnesses are here, so they can
> come and testify.  This man [indicating the victim] will tell you he does
> not know [Petitioner].  That was their only potential defense, since he
> was caught red-handed in the man's car and admitted it.  His only
> defense was to come up with some cockamamy story that he knows
> the [victim] and the man let him in there.  He's here right now.  He's
> prepared to come testify briefly if the court wants to hear from him.
>
> The court needs to make a decision whether this man is lying today . .
> . or he's guilty or he's innocent . . . you're either going to believe that
> he's innocent and you're going to sentence him to nothing or he's
> perpetrating a fraud on the court.
>
> One thing I left out of the factual basis is [Petitioner] in his admission
> told the officers that he has a problem with stealing and he needs
> help, and those two officers are down the hall and they can come in
> here and tell you what he said.  He's savvy, because he's been in the
> system for ten years. . . . That little speech was for the benefit of his
> mother.

*Id.* at 106-07.

The state attorney then reviewed Petitioner's criminal history, which

included convictions for grand theft, burglary, and violations of probation

extending back to 2007.  The state attorney argued that if Petitioner

persisted in refusing to accept responsibility, then the state would treat the

sentencing as though he went to trial and lost.  The state concluded that "if

the court is satisfied after looking at the mittimus that he's lying to the court

right now, we can go forward with sentencing.  If the court is not satisfied, I

want to present some witnesses so the court can judge the credibility of

these people."  *Id.* at 107-09.

Petitioner's counsel then inquired whether Petitioner understood that

the court would sentence him as if he were guilty, and Petitioner

responded "yes".  Petitioner affirmed that it was in his best interest to

plead no contest, and that Petitioner's statements about the offense,

offered in mitigation, were because he just wanted to be heard by the court

and he did not want to proceed with trial.  *Id.* at 110.

The court restated its finding that the plea was freely, knowingly, and

voluntarily made.  The court adjudicated Petitioner guilty and sentenced

him to five years in prison, with credit for time served.  Petitioner

immediately stated "what just happened?"  The court repeated the

adjudication and sentence, and Petitioner exclaimed "[o]h no, no, no.  I'm

going to trial.  I'm going to trial."  *Id.*  The court stated "I accepted your plea

. . . this is not Let's Make a Deal here."  Petitioner's mother also became

upset and was removed from the courtroom.  Petitioner continued to

protest his sentence until the court went off the record.  *Id.* at 112-13.

After reviewing this record, the state court concluded that Petitioner's motion to withdraw his plea was without merit.  ECF No. 17-1 at 72-73. The court rejected Petitioner's ineffective-assistance claim because Petitioner had stated under oath that he was satisfied with his attorney's representation and that no one had promised him anything regarding his sentence or forced him to enter a plea.  The court concluded that Petitioner was bound by his sworn statements made under oath, and was not entitled to go behind his sworn representations in a subsequent postconviction proceeding.  The court noted that the fact that Petitioner was presented with "unpleasant alternatives" did not render his plea involuntary.  *Id.* at 73.

Petitioner's second ground for withdrawing his plea was that the court should have conducted a more thorough colloquy based on his "potentially viable consent defense."  The court rejected this claim because in Petitioner's case "there was an independent factual basis for the plea . . . placed upon the record."  *Id.*  The court distinguished the case relied upon by Petitioner, *Davis v. State*, 605 So.2d 936 (Fla. 1st DCA 1992), which found that a plea could be withdrawn where the court did not make an extensive inquiry into the nature of the defense and the plea was not supported by an independent factual basis.  The court found that the

factual basis was sufficient to support the plea, and specifically cited

Petitioner's post-*Miranda* statement as described in the arrest mittimus.

The court found that the state's information "either negated or undermined"

Petitioner's claim of innocence and explained: "[i]f a defendant's 'claim of

innocence is meritless, or if, notwithstanding the claim of innocence, the

defendant voluntarily and intelligently entered a plea of convenience, there

[is] no prejudice or manifest injustice.'"  *Id.* at 74 (quoting *State v. Evans,*

705 So.2d 631, 632 (Fla. 3d CA 1998)).

On this record, it is apparent that the trial court in Petitioner's case

conducted a thorough plea colloquy during which Petitioner was made fully

aware of the nature of the charges, the maximum sentence he faced, and

the rights he was waiving by entering a plea.  The court ensured that the

plea was supported by an adequate factual basis, and made specific

factual findings that the plea was freely, knowingly, and voluntarily entered.

The state court's findings as to the validity of plea must be presumed to be

correct, and Petitioner has "the burden of rebutting the presumption of

correctness by clear and convincing evidence."  28 U.S.C § 2254(e)(1).

With respect to Petitioner's ineffective-assistance claims in

connection with the plea, it is clear from the record that Petitioner knew he

was waiving his potential "consent" defense and that he was made aware

by counsel and the court that he faced a maximum five-year sentence.
Petitioner was fully informed that he was entering an open plea and that his
sentence would be determined solely by the court.  *See* ECF No. 17-1 at
91-113.

   As the Supreme Court has explained, "a guilty plea represents a
break in the chain of events which has preceded it in the criminal process.
When a criminal defendant has solemnly admitted in open court that he is
in fact guilty of the offense with which he is charged, he may not thereafter
raise independent claims relating to the deprivation of constitutional rights
that occurred prior to the entry of the guilty plea."  *Tollett,* 411 U.S. at 1608.
Petitioner "may only attack the voluntary and intelligent character of the
guilty plea by showing that the advice he received from counsel was not
within the standards set forth in *McMann," id.;* that is, he must demonstrate
that the advice was not "within the range of competence demanded of
attorneys in criminal cases."  *McMann,* 397 U.S. at 771.

   Petitioner has not demonstrated that counsel's advice to enter a plea
was outside the range of competence demanded of attorneys in criminal
cases.  Petitioner's dissatisfaction with his ultimate sentence does not
mean that counsel performed deficiently in advising him to plea.  Petitioner
has failed to show that the state court's rejection of his ineffective-

assistance claim in connection with the plea is contrary to, or an

unreasonable application of *Strickland.* Petitioner therefore is not entitled

to federal habeas relief with respect to his plea.

## C. Claim 3:  Excessive Sentence

Petitioner contends that his five-year sentence is excessive and not

commensurate with his criminal history.  He contends that his public

defender "stood silent" instead of advocating for a lower sentence.  ECF

No. 1 at 13.

To the extent that Petitioner contends his counsel was ineffective in

connection with the sentence, the record refutes his claim.  During the plea

colloquy and sentencing, as summarized *supra,* counsel elicited numerous

personal factors that could be weighed in mitigation of Petitioner's

sentence, such as his employment history and assistance provided to his

family.  Because Petitioner's claim is factually refuted by the record, he has

failed to establish that counsel's performance was deficient in any way.

As an independent sentencing claim, this claim is not cognizable on

federal habeas review.  A habeas petition grounded on issues of state law

provides no basis for habeas relief because a violation of a state statute or

rule of procedure is not, in itself, a violation of the federal constitution.

*Engle v. Isaac*, 456 U.S. 107, 120-21 (1982); *Branan v. Booth*, 861 F.2d

1507, 1508 (11th Cir. 1989). A federal writ of habeas corpus is only

available in cases of federal constitutional error. *See Jones v. Goodwin,*

982 F.2d 464, 471 (11th Cir.1993); *Krasnow v. Navarro,* 909 F.2d 451, 452

(11th Cir.1990). The limitation on federal habeas review applies with equal

force when a petition, which truly involves only state law issues, is couched

in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508. In

this claim, Petitioner challenges the application of state sentencing law, and

therefore the claim is not cognizable on federal habeas review. *See* 28

U.S.C. § 2254(a); *Engle*, 456 U.S. at 120-21; *Branan*, 861 F.2d at 1508.

## D. Claim 4: Trial Court Error in Colloquy

Petitioner claims that the trial court "failed to inquire about my claimed

defense and waiver of rights," after Petitioner stated that the victim gave

consent for Petitioner to be in his car. ECF No. 1 at 15. This claim, again,

is squarely refuted by the record. As explained above, Petitioner's potential

"consent" defense was explored during the plea and sentencing

proceeding, following which the court determined that there was an

adequate factual basis for the plea. Moreover, Petitioner affirmed under

oath that it was in his best interest to plead, notwithstanding any potential

defense, and that Petitioner's statements about the defense were only

offered in mitigation and because he just wanted to be heard by the court.

ECF No. 17-1 at 110.  The state court rejected this claim on postconviction

review of the motion to withdraw the plea, finding that the state's proffer

negated or undermined Petitioner's protestations of innocence and that he

entered his plea knowing of the potential alleged defense, and therefore

had failed to establish manifest injustice, as required under state law.  ECF

No. 17-1 at 73-74.

The state court's conclusions are amply supported in the record.  On

this record, Petitioner has failed to show that the state court's rejection of

this claim was contrary to, or an unreasonable determination of federal law,

or an unreasonable determination of the facts in light of the evidence

presented in the state court.  *See* 28 U.S.C. § 2254(d)

## V.  <u>Certificate of Appealability</u>

Section 2254 Rule 11(a) provides that "[t]he district court must issue

or deny a certificate of appealability when it enters a final order adverse to

the applicant," and if a certificate is issued "the court must state the specific

issue or issues that satisfy the showing required by 28 U.S.C. §

2253(c)(2)."  A timely notice of appeal must still be filed, even if the court

issues a certificate of appealability. Rule 11(b), Rules Governing Section

2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.  <u>Conclusion</u>

For the foregoing reasons, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 5th day of February 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**